NOT FOR PUBLICATION                              [Docket No. 1]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| DIANE L. TRACY-CALDWELL, | |
| Plaintiff, | |
| v. | Civil No. 07-0384 (RMB) |
| SOCIAL SECURITY ADMINISTRATION JOANNE B. BARNEHART, COMMISSIONER, | **OPINION** |
| Defendant. | |

APPEARANCES:

Leonard H. Niedermayer, Esq.
Law Office of Warren S. Jones, Jr.
100 High Street
P.O. Box 118
Mounty Holly, NJ 08060
    Attorney for Plaintiff

Tomasina Digrigoli, Esq.
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
    Attorney for Defendant

**BUMB**, United States District Judge:

## I.   INTRODUCTION

    This matter comes before the Court (pursuant to Section
205(g) of the Social Security Act, as amended, 42 U.S.C. 405(g))
upon Plaintiff's appeal of the decision of the Administrative Law
Judge ("ALJ") denying Plaintiff's application for Social Security

1

disability benefits.

## II.  BACKGROUND

### A.  Procedural Background

Plaintiff filed an application for Social Security disability benefits on October 22, 2004, alleging a disability beginning May 31, 2003.  The claim was denied initially on April 29, 2005 and denied again upon reconsideration on June 14, 2005. Plaintiff filed a timely written request for hearing on July 1, 2005.  A hearing was held before ALJ Christopher K. Bullard on September 21, 2006, in Voorhees, New Jersey, where Plaintiff and a vocational expert, Margaret A. Preno, testified.  On October 16, 2006, the ALJ issued a decision denying Plaintiff's claim. Plaintiff then filed an appeal of the ALJ's decision to the Appeals Council and the Appeals Council denied the appeal on December 13, 2006, which became the final decision of the Commissioner.  On January 24, 2007, Plaintiff filed the above-captioned action seeking review of the Commissioner's decision.

### B.  Factual Background [1]

Plaintiff is a 44 year old woman who initially filed for

---

[1] The record contains extensive documentation of Plaintiff's medical condition and the Court need not recite every detail in this factual summary.  To the extent this Opinion relies on any evidence in the record that is not summarized in this background section, the Court cites such evidence specifically in the discussion below.

Social Security disability benefits at the age of 41.  She began experiencing severe back pain beginning in her mid to late twenties.  The problem increased in severity and in April of 1999, an MRI of the lumbar spine revealed that Plaintiff had degenerative disc disease with bulging discs at multiple levels. (Pl. Br. at 2-3).  On August 22, 1999, at Pennsylvania Hospital, Plaintiff underwent surgery – specifically, interior posterior lumbar discectomy and fusion at L4-L5 and L5-S1.  (Record at 306-312).  After surgery, Plaintiff began a physical therapy course which she attended several times a week for about six weeks. (Id. at 313-23).  However, due to continued pain, Plaintiff was referred to Dr. Kenneth Rogers for pain management.  Dr. Rogers treated Plaintiff with a TENS unit and various pain medications, including Oxycontin for about one and one-half years.  (Pl. Br. at 3; Record at 546).

During this time, Plaintiff was also evaluated by Dr. Susan I. Moreno, a physiatrist, for possible acupuncture treatment. (Pl. Br. at 3).  In a report, dated January 16, 2002, Dr. Moreno recorded Plaintiff's descriptions of the intensity of her pain, including the fact that sometimes the pain was so bad it caused Plaintiff to vomit.  (Record at 361).  Dr. Moreno also noted that Plaintiff was experiencing pain in the right leg and foot that could be "neuropathic" in nature, due to the burning and tingling sensations.  (Id.).  She noted that Plaintiff had a limited range

3

of motion in the lumbar region and "a right-sided antalgic gait pattern – bearing most of her weight on the ball of her right foot..." (Id. at 362).  Based on her evaluation of Plaintiff, Dr. Moreno gave Plaintiff various medications to try, recommended epidural steroid injections and a possible dorsal column stimulator, and completed a disability form for Plaintiff, noting,

> Although it does not appear that she has explored all of her options for pain management, in her present state I do not see how she could consistently manage in the workplace.

(Id. at 363).

Plaintiff was also evaluated a number of times by Tim Pinsky, D.O., at the request of the State of New Jersey Division of Disability Determinations in connection with Plaintiff's Social Security application.  In June of 2001, Dr. Pinsky concluded the following:

> ...considering all the information available to me, it is my impression that Ms. Caldwell will be limited to [sic] frequent bending or turning of the legs, heavy lifting and from remaining in positions that are uncomfortable to her for prolonged periods of time. This would predominately include sitting since this creates the most strain on the lower back.  However, the length of comfortable standing and walking may be less than in an otherwise healthy individual.

(Record at 350).  At the time of this 2001 evaluation, Plaintiff had ceased using narcotic pain medication and was attempting to

4

deal with her pain using only ibuprofen.[2]  (Pl. Br. at 5).  By
2003, however, Plaintiff had returned to the use of 10 milligrams
of Oxycontin twice per day.  (Id.; Record at 394).  On April 23,
2005, Dr Pinsky reevaluated Plaintiff and gave the following
conclusion:

> ...in essence, [Plaintiff] has what is described as
> failed back syndrom.  She remains on regular time-
> released narcotic analgesic medication.  ...  Taking
> all of the information available to me into
> consideration, it is my opinion that Ms. Tracy-Caldwell
> will be limited from prolonged sitting, standing or
> walking.

(Record at 395).

On May 23, 2006, Plaintiff was examined by Sidney Tobias,
M.D., who recorded the following in his report:

> The lumbar and lumbodorsal curves are extremely
> flat.  The patient's stance and gait are stiff backed
> with loss of the normal lumbar lordosis.  There is
> percussion tenderness and marked muscular spasm through
> the mid lumbar region. There is marked tenderness to
> percussion and palpation over the sacroiliac joints
> bilaterally.  ...
> Trunk flexion lacks 45 degrees with loss of curve
> reversal and with bilateral hamstring and thigh
> complaints.  Extension lacks 15 degrees and is
> productive of lower abdominal and bilateral inguinal
> pain.  Bending to the right lacks 10 degrees and to the
> left lacks 5 degrees; rotation to the right lacks 10
> degrees and to the left lacks 10 degrees, all with
> lumbar, iliolumbar, sacroiliac and posterior thigh
> pain.  During this portion of the examination, there is
> marked increase in spasm of the paraspinal and
> iliolumbar musculature with repeated episodes of

---

[2] At the hearing, Plaintiff testified that she stopped
taking Oxycontin after a year and a half because she felt she had
become addicted and did not like the way it made her short-
tempered with her children.  (Record at 546-47).

> spasticity necessitating brief halts in the course of
> the examination.  ...
>
>     At the conclusion of the examination, there is an
> obvious increase in the patient's discomfort.  The
> patient requires assistance in arising from the
> examining table and leaves the examining room with a
> marked shuffling gait, bent forward and in obvious
> pain.

(Record at 517-18).  Dr. Tobias concluded,

> [i]t is my professional opinion, with a reasonable
> degree of medical probability, that this patient has
> been unable to engage in any form of gainful employment
> for the past five (5) years and will continue to be
> unemployable for the foreseeable future.

(Id. at 519).

In addition to these physician examinations, various physical residual functional capacity ("RFC") assessments were performed to determine Plaintiff's residual functional capacity. On May 9, 2003, Dr. J. Porfino, a State agency medical consultant, opined that plaintiff could lift and/or carry less than ten pounds frequently and ten pounds occasionally, sit for six hours, and stand and/or walk for two hours in an eight-hour day.  (Def. Br. at 3; Record at 399-406).  Another RFC assessment was done on April 28, 2005 by Dr. Burton Gillette, who concluded that Plaintiff could lift and/or carry ten pounds frequently and twenty pounds occasionally, sit for six hours, and stand and/or walk for six hours in an eight-hour day.  (Def. Br. at 5; Record at 507-14).[3]

---

[3] Two prior RFC assessments, dated July 11, 2001 (Record at 353-60) and September 19, 2002 (Record at 366-73), presented conclusions similar to those presented in the later assessments.

6

At the hearing, Plaintiff testified that she is a high school graduate and has worked as an insurance representative and as a customer service representative for an insurance company. (Record at 534).  Plaintiff indicated that her work in both capacities involved sitting all day and lifting no more than ten pounds.  In her last job, Plaintiff worked for EJ & A Associates from 1994 through November of 2000, when she felt she could no longer continue her employment due to her back problems.  (Pl. Br. at 2).  Plaintiff testified that she is always in pain but that it becomes unbearable after prolonged periods of time – specifically, she testified that because of her pain, she can only sit for 1 hour, stand for 30 minutes, and walk for 20 minutes.  (Record at 539-42).  She further testified that she is able to drive for one-half hour at a time and can run errands and do light shopping.  (Id. at 543-44).  She is also able to perform light housework, such as putting away laundry, preparing simple meals and paying bills.  (Id. at 542, 544).

A vocational expert, Margaret A. Preno, also testified at the hearing.  Ms. Preno testified that Plaintiff's former work as a customer service representative for an insurance company was classified as skilled sedentary work and that her work as an insurance agent was classified as skilled light work, though Plaintiff performed it as sedentary work.  (Record at 553).  The ALJ asked Ms. Preno to assume that a person of Plaintiff's age, education and experience could sit for one hour at a time and six

hours a day, stand for thirty minutes at a time and for two hours a day, walk for twenty minutes at a time and for two hours a day, lift and carry ten pounds occasionally and less than ten pounds frequently.  (<u>Id.</u> at 555).  Ms. Preno testified that the hypothetical person could perform Plaintiff's past relevant jobs as Plaintiff performed them.  (<u>Id.</u>).

       C.   **<u>Plaintiff's Appeal</u>**

Plaintiff now argues that, given the evidence in the record, the ALJ erred in finding that Plaintiff "retained the residual functional capacity to perform sedentary work including sitting 6 hours out of an 8 hour day." (Pl. Br. at 10).  Specifically, Plaintiff argues that the ALJ failed to credit Plaintiff's complaints of subjective pain that are supported by evidence of medical impairments.  Combined with all of the medical evidence, Plaintiff asserts that her testimony regarding her subjective pain and inability to sit for prolonged periods of time should have led to a finding of disability.

**III.   STANDARD OF REVIEW**

When reviewing a final decision of the Social Security Commissioner, the Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  42 U.S.C. §§405(g), 1383(c)(3); <u>Knepp v. Apfel</u>, 204 F.3d 78, 83, (3d. Cir. 2000).  This means, "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, this Court is bound by the findings "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Thus, this Court must "review the evidence in its totality, but where it is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld." Ahearn v. Commissioner of Social Sec., 165 Fed. Appx. 212, 215 (3d Cir. 2006) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

The Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). Access to the Commissioner's reasoning is essential to meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the Court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)(citations
omitted); see also Guerrero v. Commissioner of Social Sec., 2006
WL 1722356 at *3 (D.N.J. 2006) (stating that is the ALJ's
responsibility "to analyze all the evidence and to provide
adequate explanations when disregarding portions of it")
(internal citation omitted).

     While the ALJ must review and consider pertinent medical
evidence, review all non-medical evidence, and "explain [any]
conciliations and rejections," Burnett v. Commissioner of Social
Sec., 220 F.3d 112, 122 (3d Cir. 2000), "[t]here is no
requirement that the ALJ discuss in [his] opinion every tidbit of
evidence included in the record." Hur v. Barnhart, 94 Fed. Appx.
130, 133 (3d Cir. 2004); see also Fargnoli v. Halter, 247 F.3d
34, 42 (3d Cir. 2001) ("[a]lthough we do not expect the ALJ to
make reference to every relevant treatment note in a case where
the claimant ... has voluminous medical records, we do expect the
ALJ, as the factfinder, to consider and evaluate the medical
evidence in the record consistent with his responsibilities under
the regulations and case law"). Overall, the Court must set
aside the Commissioner's decision if the Commissioner did not
take the entire record into account or failed to resolve
evidentiary conflict. Schonewolf v. Callahan, 972 F. Supp. 277,
284-85 (D.N.J. 1997) (citing Gober v. Mathews, 574 F.2d 772, 776
(3d Cir. 1978)).

     In addition to the substantial evidence inquiry, this Court

must review whether the administrative determination was made upon application of the correct legal standards.  Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983).  This Court's review of legal issues is plenary.  Sykes, 228 F.3d at 262; Schaudeck v. Commissioner of Social Sec., 181 F.3d 429, 431 (3d Cir. 1999).

## IV.   DISCUSSION

### A.  **Disability Definition**

The Social Security Act (the "Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §1382c(a)(3)(A).  The Act further states,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

The Commissioner has promulgated a five-step sequential analysis for evaluating a claimant's disability, as outlined in

11

20 C.F.R. § 404.1520(a)(4)(I)-(v).  <u>See also</u> <u>Giese v.</u>

<u>Commissioner of Social Security</u>, 251 Fed. Appx. 799, 801-02 (3d.

Cir 2007).

1.   If the claimant currently is engaged in substantial gainful
     employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment,"
     he will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment
     in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted
     or is expected to last for a continuous period of at least
     twelve months, or is expected to end in death, the claimant
     will be found "disabled."

4.   If the claimant is found to have the residual functional
     capacity ("RFC")[4] to still perform his past relevant work
     ("PRW"), he will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's RFC,
     age, education and work experience to determine whether or
     not he is capable of performing other work which exists in
     the national economy.  If he is incapable, a finding of
     disability will be entered.  On the other hand, if the
     claimant can perform other work, he will be found "not
     disabled."

20 C.F.R. § 404.1520(a)(4)(I)-(v).

     This analysis involves a shifting burden of proof.  <u>Wallace</u>

<u>v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d

Cir. 1983).  In the first four steps of the analysis, the burden

is on the claimant to prove every element of her claim by a

preponderance of the evidence.  In the final step, however, the

Commissioner bears the burden of proving that work is available

_____

     [4]  Defined as what a person is still able to do despite the
limitations caused by his impairments.  20 C.F.R. §§ 404.1545(a)
and 416.945.

for the petitioner: "[o]nce a claimant has proved that he is unable to perform his former job, the burden shifts to the [Commissioner] to prove that there is some other kind of substantial gainful employment he is able to perform[.]"  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see also Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).


**B.  Subjective Pain Analysis**

Claims of disabling back pain are among the most difficult to resolve because they are largely based on subjective pain analyses.  See Taybron v. Harris, 667 F.2d 412, 415 (3d Cir. 1981).  The Third Circuit has developed a standard as to subjective pain, which requires,

> (1) that subjective complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence; (2) that subjective pain may support a claim for disability benefits and may be disabling; (3) that where such complaints are supported by medical evidence, they should be given great weight; and (4) that where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount the claimant's pain without contrary medical evidence.

Green v. Schweiker, 749 F.2d 1066, 1068 (3d Cir. 1984) (citing Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981); Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971); Taybron, 667 F.2d at 415 n. 6)) (internal citations and quotations omitted).

The Act requires objective medical evidence showing the existence of an impairment that could reasonably be expected to

13

produce the pain alleged.  42 U.S.C. §423(d)(5)(A); 20 C.F.R.
§§404.1529(a), 416.929(a); <u>Hartranft v. Apfel</u>, 181 F.3d 358, 362
(3d Cir. 1999).  Thus, a claimant's complaints of pain do not
alone establish disability.  However, when a claimant complains
of pain, "the testimony may not be discredited on the basis of
the ALJ's own medical judgement; it must be discredited by
contrary medical evidence."  <u>Cruz v. Commissioner of Social Sec.</u>,
244 Fed. Appx. 475, 481 (3d Cir. 2007) (citing <u>Kent v. Schweiker</u>,
710 F.2d 110, 115 (3d Cir. 1983)).

        In determining whether the claimant is disabled, the ALJ
must consider all of claimant's symptoms, including pain, and the
extent to which the symptoms can reasonably be accepted as
consistent with the objective medical evidence and other
evidence.  20 C.F.R. §404.1529(a).  Credibility determinations of
the claimant's pain should be based on the entire case record,
including objective medical evidence, the individual's own
statements, statements and other information provided by
physicians or psychologists, and any other relevant evidence in
the case record.  SSR 96-7p, 1996 WL 374186 at *1 (S.S.A. Jul. 2,
1996).  The ALJ should consider the claimant's daily activities,
the type, dosage, and effectiveness of pain medication, the
treatment (other than medication) received for relief of other
symptoms, and any measures used to relieve pain or other
symptoms.  42 U.S.C. §423(d)(5)(A); 20 C.F.R. §§404.1529(a),
416.929(a); <u>Hartranft v. Apfel</u>, 181 F.3d at 362; <u>Phillips v.</u>

<u>Barnhart</u>, 91 Fed. Appx. 775, 781-82 (3d Cir. 2004).  When there is "little evidence to support subjective complaints of pain, and there is evidence that medication relieves the pain, an ALJ may decide that there is insufficient evidence to support a finding of disability."  <u>Cruz</u>, 244 Fed. Appx. at 481 (citing <u>Matullo v. Bowen</u>, 976 F.2d 240, 245 (3d Cir. 1990)).

Although the ALJ must give serious consideration to a claimant's subjective complaints, <u>Mason v. Shalala</u>, 994 F.2d 1058, 1067 (3d Cir. 1993); <u>Ferguson v. Schweiker</u>, 765 F.2d 31, 37 (3d Cir. 1985), "the ALJ's assessment of a plaintiff's credibility is afforded great deference, because the ALJ is in the best position to evaluate the demeanor and attitude of the plaintiff."  <u>Schoengarth v. Barnhart</u>, 416 F. Supp. 2d 260, 268 (D. Del. 2006); <u>see also</u> <u>Wilson v. Apfel</u>, 1999 WL 993723 at *3 (E.D. Pa. Oct. 29, 1999).  However, the ALJ must explain the reasons for his credibility determinations and support his conclusions with medical evidence in the record.  <u>Schonewolf v. Callahan</u>, 972 F.Supp. 277, 286 (D.N.J. 1997); <u>Schoengarth</u>, 416 F. Supp. 2d at 268; <u>Matullo v. Bowen</u>, 926 F.2d 240, 245 (3d Cir. 1990); <u>Grandillo v. Barnhart</u>, 105 Fed. Appx. 415, 418 (3d Cir. 2004).

## C.  **ALJ's Decision**

The issue in this case, as framed in Plaintiff's brief, is whether the ALJ properly credited Plaintiff's complaints of

subjective pain when determining that she had the residual functional capacity to continue sedentary work.  Plaintiff asserts that her testimony regarding her subjective pain and inability to sit for prolonged periods of time is supported by medical evidence and therefore should have led to a finding of disability.  Thus, this Court must consider whether the record presents objective medical evidence that gives credence to Plaintiff's complaints of pain.

The ALJ determined that, "there is insufficient medical evidence in the record, regarding the claimant's conditions, to find that she had [sic] functional limitations to such a disabling degree, as to preclude the performance of all work activity..." (ALJ Opinion at 6).  In support of this decision, the ALJ made various determinations, citing medical opinions and expert reports in support, and the Court will address each point in turn.

### 1.  Evidence of Lumbar Radiculopathy

To begin, the ALJ concluded that there was "no evidence of radiculopathy and no evidence of disc herniation or spinal stenosis." (ALJ Opinion at 6).  In support of this statement, the ALJ cites to Exhibit 16F, which contains 67 pages of progress notes from Manser Medical Associates covering the period from July 22, 1996 to December 2, 2004.  Presumably, these specific conclusions are taken from the following two reports:  the EMG report, dated November 8, 2000, which states "[n]o electrical

16

evidence of lumbosacral radiculopathy" and the CT scan, dated November 7, 2000, which states "[n]o disc herniation or spinal stenosis is demonstrated." (Record at 463-64). However, later medical reports contain contrary conclusions. In a letter dated November 7, 2003, Dr. Francis Pizzi of the Neuro-Group concluded that Plaintiff has "lumbar radiculitis." (Record at 408). Similarly, in his report dated May 1, 2006, Dr. Lew Little concluded, "[t]he patient suffers from chronic lower back pain, post lumbar laminectomy pain syndrome, lumbar degenerative disc disease and <u>lumbar radiculopathy</u>." (Record at 527) (emphasis added).

Evidence of these disorders, specifically lumbar radiculopathy, may well support Plaintiff's testimony concerning the intensity of her pain. It cannot be determined from the record, however, whether or not the ALJ considered this evidence. <u>See, e.g.</u>, <u>Gilbert v. Astrue</u>, 2008 WL 314568 at *8 (D.N.J. Jan. 30, 2008) ("by not considering certain probative evidence, the Court questions the ALJ's decision to discredit Plaintiff's subjective complaints of pain"). On remand, the ALJ should consider the evidence of lumbar radiculopathy and weigh it against any opposing evidence or explain his rejection of this evidence if he finds it not credible.

### 2. Medical Opinion of Dr. Tobias

Second, the ALJ "accord[ed] the opinion of Sydney Tobias, M.D., an examination physician, no weight as the physician

examined the claimant for purposes of litigation." (ALJ Opinion at 6). The ALJ cites no authority for this proposition. Although the Third Circuit has not addressed this issue directly, the Ninth Circuit has explicitly held that "the mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report." Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998). As the Ninth Circuit previously explained,

> [a]n examining doctor's findings are entitled to no
> less weight when the examination is procured by the
> claimant than when it is obtained by the Commissioner.
> ...[t]he Secretary may not assume that doctors
> routinely lie in order to help their patients collect
> disability benefits.

Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995) (internal quotations and citations omitted). This Court finds this rationale persuasive. Accordingly, the fact that Dr. Tobias' opinion was elicited for purposes of litigation does not in and of itself permit the ALJ to afford that opinion no weight. The ALJ's rejection of Dr. Tobias' opinion on that basis alone was not warranted.

Nonetheless, the ALJ may still reject Dr. Tobias' opinion as unreliable if it is shown to be inconsistent with other records, reports or findings. Reddick, 157 F.3d at 726. Indeed, the very next sentence in the ALJ's opinion seeks to point out such inconsistency:

18

> Although Dr. Tobias stated that the claimant was unable
> to perform sedentary work, the claimant testified that
> she could sit for 1 hour, stand for 30 minutes, and
> walk for 20 minutes, all statements which were included
> in the undersigned's hypothetical residual functional
> capacity proposed to the vocational expert.

(ALJ Opinion at 6).  While Dr. Tobias and the vocational expert,

Ms. Preno, did reach different conclusions, the ALJ failed to

mention that the hypothetical he posed to Ms. Preno during the

hearing included other extremely relevant assumptions.  The

totality of the ALJ's hypothetical as presented to Ms. Preno was

as follows:

> Assume this individual can sit for up to one hour at a
> time.  Assume this individual can sit for a total of
> six hours out of eight in the workday.  Assume this
> individual can stand for up to 30 minutes at a time.
> Assume this individual can stand for a total of two
> hours out of eight in the workday.  Assume this
> individual can walk for up to 20 minutes at a time.
> Assume this individual can walk for a total of two
> hours out of eight in the workday.

(Record at 554) (emphasis added).

Reading the complete hypothetical, it becomes clear that Ms.

Preno's opinion that Plaintiff could perform sedentary work was

not based solely on the exertional limitations Plaintiff

testified to, but rather some "assumed" total limitations given

by the ALJ.  Having clarified that Dr. Tobias and the vocational

expert were each working from a different set of facts, the

alleged inconsistency between their conclusions becomes nothing

more than an unfair comparison that merely serves to muddy the

waters.

19

In light of the above, the ALJ should have considered Dr. Tobias' conclusions as set forth in his letter, dated May 23, 2006. (Record at 515-19). In that letter, Dr. Tobias noted a long list of symptoms Plaintiff suffered, including "stiff backed" stance and gait, "percussion tenderness and marked muscular spasm through the mid lumbar region[,]" "marked tenderness to percussion and palpation over the sacroiliac joints bilaterally[,]" diminished flexion and extension (both which caused Plaintiff pain in performing), and "marked increase in spasm of the paraspinal and iliolumbar musculature with repeated episodes of spasticity necessitating brief halts in the course of the examination." (Id. at 517-18). Dr. Tobias also noted that at the end of the examination, Plaintiff left the room "with a marked shuffling gait, bent forward and in obvious pain." (Id. at 518). Based on his examination of Plaintiff, Dr. Tobias concluded as follows:

> it is my professional opinion, with a reasonable degree of medical probability, that this patient has been unable to engage in any form of gainful employment for the past five (5) years and will continue to be unemployable for the foreseeable future.

(Id. at 519). Dr. Tobias' opinion clearly provides evidence that supports Plaintiff's complaints of subjective pain. Had the ALJ taken proper consideration of this evidence, the credibility determination as to Plaintiff's subjective pain may have turned out differently.

### 3.  Medical Opinion of Dr. Moreno

It does not appear to the Court that the ALJ considered the medical opinion of Dr. Moreno, as the ALJ's decision contains no discussion of her evaluation of Plaintiff nor any explanation as to why such opinion was rejected.  Dr. Susan Moreno examined Plaintiff on January 16, 2002, and concluded that, "[a]lthough it does not appear that [Plaintiff] has explored all options for pain management, in her present state I do not see how she could consistently manage in the workplace."  (Record at 363).  It cannot be determined from the record whether or not the ALJ considered this evidence.

### 4.  Plaintiff's Total Exertional Limitations

The ALJ cites no specific authority for the assumptions regarding Plaintiff's total exertional limitations which he included in his hypothetical to Ms. Preno, the vocational expert, at the hearing.  From a review of the record, however, these limitations appear to be based on the four RFC assessments completed by non-examining State Agency review physicians on July 11, 2001 (Record at 353-60), September 18, 2002 (Id. at 366-73), May 9, 2003 (Id. at 399-406), and April 28, 2005 (Id. at 507-14). In each of these assessments, the non-examining physicians checked the box indicating that Plaintiff could sit with normal breaks for a total of "about 6 hours in an 8-hour workday." While the conclusions of the reviewing physicians are internally consistent, they are contradicted by the opinions of various

21

treating and/or examining doctors.

For example, on June 15, 2001, Dr. Pinsky examined Plaintiff and gave the following conclusion:

> ...it is my impression that Ms. Tracy-Caldwell will be limited ... from remaining in positions that are uncomfortable to her for a prolonged period of time. This would predominantly include sitting since this creates the most strain on the lower back.

(Record at 350).  Similarly, during his examination of Plaintiff on December 7, 2001, Dr. Kenneth Rogers recorded Plaintiff as having a sitting tolerance of two hours.  (Record at 431).  Dr. Moreno examined Plaintiff on January 16, 2002, and noted that Plaintiff was "unable to sit stand or walk for prolonged periods (>1 hr)."  (Record at 365).  On April 28, 2003, Dr. Pinsky examined Plaintiff again and concluded that Plaintiff "has what is called failed back syndrome" and "will be limited from prolonged sitting, standing or walking."  (Record at 395).

These medical records show that Plaintiff's sitting tolerance was very low, which is entirely consistent with Plaintiff's testimony over the past several years.  The record contains numerous forms completed by Plaintiff in which she describes her daily activities and she consistently recorded an inability to sit for more than two hours:  she cannot go to the movies because she cannot sit through an entire movie (Record at 174, 177); she cannot drive for a couple of hours because it causes her pain (<u>Id.</u> at 177); she has to lay down on a heating pad after being on her feet during lunch (<u>Id.</u> at 227); she cannot

22

stand, sit or walk too long because it makes her pain worse (Id. at 232).  Moreover, Plaintiff's testimony at the hearing was also consistent with this low sitting tolerance.  (Id. at 539-42).

Given the record, it is difficult to understand why the ALJ adopted the conclusion that Plaintiff can sit for six hours out of an eight-hour workday.  From the ALJ's decision, it appears to the Court that the ALJ accorded the conclusions of the non-examining physicians more weight than the treating and examining physicians.[5]  This is contrary to the Third Circuit's rule that the court "must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all."  Correa v. Commissioner, 381 F. Supp. 2d 386, 395 (citing Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993)).  If certain credibility determinations were made against these treating/examining doctors, the ALJ was required to explain those decisions.  See Schonewolf v. Callahan, 972 F.Supp. 277, 286 (D.N.J. 1997); Schoengarth, 416 F. Supp. 2d at 268; Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990; Grandillo v. Barnhart, 105 Fed. Appx. 415, 418 (3d Cir. 2004).

---

[5] Indeed, the ALJ seems to give the benefit of the doubt to the non-examining State Agency physicians: "although the review physicians did not have access to the entire record currently before the undersigned, including the testimony provided at the hearing, the assessments are an accurate analysis of the claimant's functional abilities."  (ALJ Opinion at 6).  This presumption of accuracy is conclusory and improper without some explanation.

**5.  Plaintiff's Pain Medication**

In his opinion, the ALJ notes that Plaintiff "has not been prescribed any pain medications until this year," citing Exhibits 29E, 17F and 22F.  (ALJ Opinion at 6) (internal citations omitted).  However, the record is replete with evidence that Plaintiff was prescribed a variety of medications during the last several years, including OxyContin, Codeine, Hydrocodone, Liboderm patches, Cymbalta, and Topomax.  (See, e.g., Record at 159, 161, 229, 269, 297, 394, 407, 525).  In addition, Plaintiff was referred to other types of treatment for her condition, including physical therapy, epidural steroid injections, pain management, acupuncture, and chiropractic treatment.  (See, e.g., Record at 407).

While at times Plaintiff recorded using only over-the-counter medicines for her pain, she offered various explanations for this, none of which included a lack of serious pain.  According to Plaintiff, she stopped taking OxyContin at one point because it made her sick to her stomach, short-tempered and unable to sleep and she was concerned about becoming addicted.  (Record at 241, 243, 501, 503, 547).  Moreover, Plaintiff claims she found very little if any relief from the hydrocodone and codeine (Record at 175) and she could not afford to get prescription medication during the first part of 2005 because her husband's insurance had lapsed (Record at 278).  At the time of the hearing, Plaintiff testified that she was taking Topamax for

24

arthritis in her knees and Cymbalta in small doses for chronic pain. (Id. at 547-48).

Based on Plaintiff's history of prescribed pain medication as evidenced by the record, the ALJ's determination that Plaintiff only began taking pain medication this year is inaccurate.  On remand, the ALJ must take into consideration all the evidence surrounding Plaintiff's use of pain medication and determine whether it supports the intensity of Plaintiff's complaints of subjective pain.

### 6.  Plaintiff's Testimony Concerning Pain

Finally, while the ALJ's decision examined some of the medical evidence from various physicians, it failed to discuss Plaintiff's actual complaints of pain.  For instance, Plaintiff claims that her pain is sometimes so severe that it causes her to become sick to her stomach. (Record at 158, 210).  While the ALJ "notes that the claimant's argument is that she is on [sic] so much pain that she would be unable to perform any full time work" (ALJ Opinion at 6), he did not discuss Plaintiff's specific complaints in any detail nor did he offer anything beyond conclusory statements to explain his credibility determinations as to Plaintiff's complaints.  It cannot be determined from the record whether the ALJ considered this evidence.  On remand, the ALJ should address Plaintiff's complaints of subjective pain and explain his reasons for discounting them.

**V.   CONCLUSION**

For the aforementioned reasons, this Court finds that it cannot be determined whether the ALJ's decision denying Plaintiff disability status was made with proper consideration of all the evidence in the record.  To the extent the ALJ did consider all the evidence but chose to discount it, the ALJ must offer explanations for such determinations.  Therefore, this case is remanded to the ALJ for reconsideration of the evidence as discussed in this Opinion.  An appropriate Order will issue this date.


Dated:  March 26, 2008            s/Renée Marie Bumb
                                  RENÉE MARIE BUMB
                                  UNITED STATES DISTRICT JUDGE